Richard D. Lang and Rose Lang v. Commissioner.
Lang v. Commissioner
Docket No. 485-69.
United States Tax Court
T.C. Memo 1972-8; 1972 Tax Ct. Memo LEXIS 246; 31 T.C.M. (CCH) 15; T.C.M. (RIA) 72008; January 11, 1972, Filed William M. Siegenthaler, for the petitioners. Thomas M. Ingoldsby, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A *248 deficiency in the amount of $2,679.87 has been determined by the Commissioner in the income tax of petitioners for the taxable year 1966. The issue to be decided is whether respondent has erred in adding to petitioners' tax for that year certain investment credits taken in their returns for 1962 and 1964. Certain concessions have been made by petitioners on the trial hereof. Findings of Fact The facts which have been stipulated are found accordingly. The petitioners Richard D. Lang and Rose Lang are husband and wife. Their residence was in Anaheim, California, as of the date their petition was filed with this Court. From 1961 until early in 1966, the petitioner Richard D. Lang was a farmer in Hagerman, New Mexico. The petitioners purchased certain property in 1962 which qualified as section 38 property. The following list describes this property, states the cost of each piece of property to the petitioners, notes the date each piece of property was placed in service, and shows the amount of investment credit claimed on each piece of property by the petitioners on their Federal income tax return for the year 1962: Investment
Date placed
credit taken
Property purchased
Cost
in service
on 8-yr. life
16-inch plow
$ 751.65
1-62
$ 52.62
4-row cultivator
860.88
2-62
60.26
4-row crustbuster
453.02
3-62
31.71
1962 Chev. pickup
2,005.29
10-62
140.37
*249 16 The petitioners purchased certain property in 1964 which qualified as section 38 property. The following list describes this property, states the cost of each piece of property to the petitioners, notes the date each piece of property was placed in service, and shows the amount of investment credit claimed on each piece of property by the petitioners on their Federal income tax return for the year 1964: Investment
Date placed
credit taken
Property purchased
Cost
in service
on 8-yr. life
Artesian well 1951 drilled
$15,000
1-1-64
$1,050.00
Pump and gearhead
5,000
1-1-64
350.00
Artesian well 1960 drilled
15,000
1-1-64
1,050.00
Pump and gearhead
5,000
1-1-64
350.00
IHC pump engine
2,000
1-1-64
140.00
12800' concrete ditch
12,800
1-1-64
896.00
Pressure pump and tanks
400
1-1-64
28.00
3 shallow wells and casing
4,500
1-1-64
315.00
Self-dump baler trailer
550
4-64
38.50
Shopsmith
150
4-64
10.50
On December 31, 1963, the First National Bank in Hagerman, New Mexico, loaned the petitioners $30,000. The First National Bank of Roswell (hereinafter the Bank), Roswell, New Mexico, acquired the First National *250 Bank in Hagerman during the year 1965. The petitioners defaulted on the repayment of the loan so made to them. The property on which investment credit had been claimed in 1962 and 1964 was disposed of during 1966 in the following manner: (a) The 16-inch plow, the 4-row cultivator, the 4-row crustbuster, and the self-dump baler trailer were sold at public auction in January of 1966. The proceeds from this sale were paid to the Bank in partial satisfaction of their indebtedness. (b) The 1962 Chevrolet pickup was sold at a private sale and the petitioners used the proceeds from this sale to pay their personal expenses. (c) The property noted below was transferred by petitioners to the Bank under a warranty deed on February 17, 1966: Artesian well - 1951 drilled Pump and gearhead Artesian well - 1960 drilled Pump and gearhead IHC pump engine 12800' concrete ditch Pressure pump and tanks 3 shallow wells and casing This property was transferred to the Bank also in partial satisfaction of petitioners' indebtedness to the Bank. The shopsmith which was in petitioners' possession throughout 1966 was either used to satisfy the petitioners' personal needs or was in *251 storage. The petitioners claimed no depreciation on the shopsmith for 1966 and it was not used in the petitioners' trade or business during that year. Opinion Section 47(a)(1) [1] of the 1954 Code provides for the recapture of prior investment credit taken by a taxpayer with respect to section 38 property by way of addition to his tax in and for any year in which he disposes of section 38 property prior to the expiration of the useful life thereof used in computing such investment credit. It further provides for such recapture where such property "otherwise ceases to be section 38 17 property." Section 47(a)(4)(A) [2] excuses recapture of investment credit where such property is disposed of or ceases to be section 38 property before the end of its useful life because of damage to it caused by a casualty or theft. Section 48(a)(1) [3] defines section 38 property as tangible property used in production but only such property with respect to which depreciation is allowable and which has a useful life of 4 years or more. Section 47(b) [4] of the 1954 Code provides that section 38 property shall not lose its character as such merely because the taxpayer has changed the form in which *252 he conducts his business, the property is retained in such trade or business, and the taxpayer retains a substantial interest therein. Section 1.47-2(a), Income Tax Regulations, [5] provides among other things that the word "disposition" as used thereafter in the regulations "does not include a mere transfer of title to a creditor upon creation of a security interest." Income Tax Regulations section 1.47-2(a)(2)(iii) gives the following example of the application thereof of the word "cessation" with respect to section 38 property ceasing to be such: (iii) This subparagraph may be illustrated by the following examples: Example (1). A, an individual who makes his returns on the basis of the calendar year, on January 1, 1962, acquired and placed in service in his trade or business an item of section 38 property with an estimated useful life of eight years. On January 1, 1965, A removes the item of section 38 property from use in his trade or business by converting such item to personal use. Therefore no deduction for depreciation with respect to such item of property is allowable to A for the taxable year 1965. On January 1, 1965, such item of property ceases to be section 38 property *253 with respect to A. *254 In his notice of deficiency, respondent has added to petitioners' reported income tax for the year 1966 the amount of the investment credit taken by petitioners in 1962 and 1964 with respect to the admittedly section 38 property listed in our findings inasmuch as petitioners had failed to include any portion thereof in their reported tax for that year. On the trial hereof, petitioners conceded the recapture of investment credit taken with respect to a 1962 Chevrolet pickup truck which was sold at private sale and property sold at public auction consisting of a 16-inch plow, 4-row cultivator, 4-row crustbuster, and a self-dump baler trailer. Only the investment credit relating to the property transferred by deed to the Bank and the shopsmith remain at issue. Examination of the pleadings, the opening statement of petitioners and their briefs leaves us confused as to the issue herein. In their opening statement, petitioners make the statement that "for the reason of this 18 insolvency we do not think that the IRS is entitled to recapture the investment credit." In their opening brief, the issue is framed by the statement, "Insolvency is insolvency, and the petitioners were insolvent *255 in 1966. A taxpayer should not be required to go into bankruptcy in order to receive relief from the recapture of Investment Credit when he is insolvent beyond a reasonable doubt." And again in the same brief without further explanation, "In the year of 1966, the Petitioners had a vested right in all the proceeds from the sale of the farm over and above the amount due and owing the First National Bank of Roswell." In their "Points Relied On" which was contained in their reply brief, the statement is made, "The recapture is specifically exempted under rules of Section 47(b)." And again in the "Argument" section of the reply brief, "that no investment credit was claimed by the First National Bank of Roswell, and therefore the petitioners' investment credit continued." The only inkling we are able to obtain from the entire file and record herein as to any authority which they claim is support for any position taken by them is the following statement in their reply brief: The respondent did not take the Section hereinbelow in consideration but relied entirely on Section 47(a), giving no application whatsoever to Section 47 (b), 48(6)(i), (ii), (iii), (iv), which also includes Sections 322, 351, 361, *256 371(a), 374(a), 721 or 731. * * * The application of those sections of the Code to any issue raised herein is apparently assumed by petitioners to be so obvious to us as to need no explanation for the same paragraph merely states immediately after the above quote, "That petitioners had a vested right in all proceeds over and above the amount due the bank in 1966." With respect to section 47(b), the only applicable portion thereof to the facts before us might be the provision that section 38 property does not lose its character as such merely because of a change in form of the conduct of the business in which it is used. Suffice it to say that the evidence fails to show that the property conveyed to the Bank and that which was sold to others in 1966 was used in any trade or business thereafter which had any relationship to that in which it had been used by petitioners and for that reason alone it ceased to be section 38 property. We find no section 48(6)(i), (ii), (iii), or (iv) in the Code but assume petitioners meant to cite section 48(h)(9) and subparagraphs thereunder in view of the fact that only there is there any reference to the later sections cited in petitioners' reply brief *257 as quoted above. We find no application in any of those provisions to the facts before us. Whatever the issue actually is upon which petitioners base their case, we think it fair to conclude from the entire record that the premise thereof is the claimed insolvency of petitioners in 1966. Because the evidence herein does not support a finding of their insolvency in that year, they must fail with respect to any contention premised upon their insolvency. During the years 1961 through 1966, the year at issue, Richard Lang was in the business of accountancy, was a cotton buyer and merchandiser, and a farmer. When his default on repayment of money borrowed from the Bank occurred in 1966, Richard "sold" all of his businesses and his home with the furnishings thereof and a portion of his farm machinery and equipment. The remainder of his farm assets he conveyed to the Bank. All proceeds of such sales were applied on his indebtedness to the Bank. After doing so, he was still in debt in an undisclosed amount. This is the most we can glean from the evidence relating to petitioners' claimed insolvency. Again we are confused as to petitioners' claim of insolvency in view of the fact that *258 they insist repeatedly on brief without explanation, that even though they had sold all their assets or conveyed them by warranty deed to the Bank, they still retained "a vested right in all proceeds over and above the amount due the bank in 1966." For all the record shows, such "vested right" may have had sufficient value to negate their claim of insolvency. There is no showing either with respect to petitioners' earnings from any other source which may have constituted their livelihood during the year at issue. In fact, the record is so meager with respect to the issue of their insolvency that we remain unconvinced that it existed in 1966. We cannot conclude that petitioners' transfer of property to the Bank was merely to create a security interest as provided by Income Tax Regulations section 1.47-2(a). The transfer to which that section alludes is the agreement entered into by petitioners and the Bank at the time of 19 their borrowing from the Bank. Their later transfer by deed is not encompassed in that section for the record does not indicate that the possession and use of the property was retained by petitioners. It follows that unless they retained and used the same in *259 their business, it no longer qualified as section 38 property under section 48 which requires that such property be depreciable. There is no evidence from which we can conclude that the property in question was itself damaged or destroyed because of any casualty or theft as required by section 47 (a)(4)(A) in order that recapture of investment credit be excused. The evidence also will not support a finding that the transfer of property herein was for the purpose of permitting a change in the form in which petitioners' business was conducted as required by section 47(b) in order that recapture be excused. The evidence does support the finding that no business as was conducted by petitioners prior to the transfer was thereafter carried on because all of such businesses were sold during 1966. Although possession of the shopsmith was retained by petitioners, we find it was withdrawn from business use by them during 1966 and thereupon ceased to be depreciable and therefore was no longer section 38 property under section 48. For failure to sustain their burden of proof with respect to the basis of petitioners' contentions, the fact that no law or regulation excuses recapture of their *260 1962 and 1964 investment credit, and because of petitioners' concessions made on the trial hereof Decision will be entered for the respondent. Footnotes
1. SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY. (a) General Rule. - Under regulations prescribed by the Secretary or his delegate - (1) Early Disposition, Etc. - If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by the amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property. ↩
2. SEC. 47(a)(4) Property Destroyed by Casualty, Etc., - No increase shall be made under paragraph (1) and no adjustment shall be made under paragraph (3) in any case in which - (A) any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, on account of its destruction or damage by fire, storm, shipwreck, or other casualty, or by reason of its theft. ↩
3. SEC. 48. DEFINITIONS; SPECIAL RULES. (a) Section 38 Property. - (1) In General. - Except as provided in this subsection, the term "section 38 property" means - (A) tangible personal property, or (B) other tangible property (not including a building and its structural components) but only if such property - (i) is used as an integral part of manufacturing, production, or extraction, or of furnishing transportation, communications, electrical energy, gas, water, or sewage disposal services, or (ii) constitutes a research or storage facility used in connection with any of the activities referred to in clause (i) or (C) elevators and escalators, but only if - (i) the construction, reconstruction, or erection of the elevator or escalator is completed by the taxpayer after June 30, 1963, or (ii) the elevator or escalator is acquired after 30, 1963, and the original use of such elevator or escalator commences with the taxpayer and commences after such date. Such term includes only property with respect to which depreciation (or amortization in lieu of depreciation) is allowable and having a useful life (determined as of the time such property is placed in service) of 4 years or more. ↩
4. SEC. 47(b) Section Not to Apply in Certain Cases. - Subsection (a) shall not apply to - (1) a transfer by reason of death, or (2) a transaction to which section 381(a) applies. For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business. ↩
5. SEC. 1.47-2 "Disposition" and "cessation". (a) General rule - (1) "Disposition". For purposes of this section and § 1.47-1 and §§ 1.47-3 through 1.47-6, the term "disposition" includes a sale in a sale-and-leaseback transaction, a transfer upon the foreclosure of a security interest and a gift, but such term does not include a mere transfer of title to a creditor upon creation of a security interest. See paragraph (g) of § 1.47-3 for treatment of certain sale-and-leaseback transactions.↩